IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**JOHNATHAN C. LONG,**

   Plaintiff,

v.                  Civil Action No. **3:10CV532**

**DETECTIVE BERES,** *et al.*,

   Defendants.

## MEMORANDUM OPINION

Johnathan C. Long, a federal prisoner proceeding *pro se* and *in forma pauperis*, brings this civil action pursuant to 42 U.S.C. § 1983.[1] The action proceeds on Long's Complaint, in which he alleges that, by swabbing his hands for gunpowder residue without his consent, Detective Beres, Officer Nemetz, and Officer Alexander ("defendants")[2] violated his Fourth[3] and Fifth[4] Amendment rights. The matter is now before the Court on the defendants' Motion for Summary Judgment. Long has responded. This matter is ripe for judgment. Because the

---

[1] That statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] At all times relevant to this action, the Hampton Police Department employed the defendants.

[3] "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV.

[4] "No person shall . . . be deprived of life, liberty, or property without due process of law . . . ." U.S. Const. amend. V.

defendants had probable cause to conduct the search and were facing exigent circumstances, the Court will GRANT their Motion for Summary Judgment.

## I. SUMMARY OF CLAIMS

The action arises from a shooting in Hampton, Virginia on the night of March 12, 2010. In his Complaint, Long makes the following claims:[5]

Claim One     Defendants violated Long's Fourth Amendment right to freedom from unlawful search and seizure by restraining Long and swabbing his hands for gunpowder residue without his consent.

Claim Two     Defendants violated Long's Fifth Amendment right to freedom from deprivation of liberty without due process of law by restraining Long and swabbing his hands for gunpowder residue without his consent.

(Compl. at 5–5a.)[6] Long seeks monetary damages in the amount of $150,000 and "for [the defendants] to take a class on police brutality." (*Id.* at 6.) In his "Brief in Support of His Response/Opposition to Defendants' Motion for Summary Judgment" ("Brief in Opposition"), Long seeks to "voluntary [*sic*] withdraw his claim of Fifth Amendment violations against all the Defendants in this case." (Brief in Opposition 12.) Long's request will be GRANTED, and Claim Two will be DISMISSED WITHOUT PREJUDICE.

---

[5] The Court found in its February 8, 2012 Memorandum Opinion and Order, that Long, in his Complaint, did not plead a claim for excessive force. As a result, the only Fourth Amendment claim before the Court has to do with the permissibility of the search, not the degree of force used in seizing Long or conducting that search.

[6] The Court corrected the capitalization in the quotations of Long's submissions. Further, Long's Complaint includes an unnumbered page between pages five and six, which the Court refers to as page "5a."

## II. SUMMARY JUDGMENT STANDARD

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is the responsibility of the party seeking summary judgment to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)). Additionally, "'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'" *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 & n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . .").

In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). A mere scintilla of evidence, however, will not preclude summary judgment. *Anderson*, 477 U.S. at 251. Moreover, not all disputes of fact preclude summary judgment. Instead, "the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 248. With respect to materiality, "[o]nly

3

disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

As to genuineness, the nonmoving party "must produce . . . evidence that creates a fair doubt; wholly speculative assertions will not suffice." *Bongam v. Action Toyota, Inc.*, 14 F. App'x 275, 280 (4th Cir. 2001) (internal quotation marks omitted). "A motion for summary judgment may not be defeated by evidence that is 'merely colorable' or 'is not sufficiently probative.'" *M & M Med. Supplies & Serv., Inc. v. Pleasant Valley Hosp., Inc.*, 981 F.2d 160, 163 (4th Cir. 1993) (quoting *Anderson*, 477 U.S. at 249–50). Nor will mere "'metaphysical doubt as to the material facts'" create a genuine dispute. *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Thus, "[t]he nonmovant can show that a dispute is genuine only if it provides sufficient evidence so that a 'reasonable jury could return a verdict for the nonmoving party.'" *Wiggins v. DaVita Tidewater LLC*, 451 F. Supp. 2d 789, 796 (E.D. Va. 2006) (quoting *Anderson*, 477 U.S. at 248).

In support of their Motion for Summary Judgment, the defendants submit affidavits of Officer James Douglas Meadows (Br. Supp. Mot. Summ. J. (Docket No. 39-1) ("Meadows Aff.")), Officer Michael Joseph Beres (Br. Supp. Mot. Summ. J. (Docket No. 39-2) ("Beres Aff.")), Diane V. Gardner (Br. Supp. Mot. Summ. J. (Docket No. 39-3) (Gardner Aff.")), a List of Events (Br. Supp. Mot. Summ J. (Docket No. 39-4, Ex. A)), the affidavit of Officer William Lawrence Alexander (Br. Supp. Mot. Summ. J. (Docket No. 39-5) ("Alexander Aff.")), and the affidavit of Officer Steven Robert Nemetz (Br. Supp. Mot. Summ. J. (Docket No. 39-6) ("Nemetz Aff.")). In response, Long submits his own affidavit (Brief in Opposition (Docket No

41-1) ("Long Aff.")), the affidavit of Paulette D. Jones (Brief in Opposition (Docket No. 41-2) ("Jones Aff.")), and submits eight police reports (Brief in Opposition Ex. A-H).[7]

Moreover, the facts offered by affidavit or sworn declaration must also be in the form of admissible evidence. *See* Fed. R. Civ. P. 56(c)(4). In this regard, the statement in the affidavit or sworn declaration "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *Id.* Therefore, "summary judgment affidavits cannot be conclusory or based upon hearsay." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) (internal citations omitted). To the extent Long uses his affidavit to recount and counter facts in the defendants' affidavits, these statements lack facts made on personal knowledge.[8]

In light of the foregoing principles and submissions, the record establishes the following facts for the purposes of the Motion for Summary Judgment. The Court draws all permissible inferences in Long's favor.

---

[7] The defendants contend that the police reports "are unsworn and unauthenticated" and, thus, "constitute inadmissible evidence." (Defs.' Reply 11 (citing Fed. R. Civ. P. 56(c).) The Court need not definitively resolve this dispute. Even assuming their admissibility, the police reports are largely irrelevant to establishing whether the defendants lacked probable cause or exigent circumstances. It appears Long relies on the police reports to argue that the officers lacked probable cause for the GSR Test because the officers failed to interview the witnesses before ordering the GSR Test. (Brief in Opposition 7–10.) The defendants do not contest this fact.

[8] For example, paragraphs 8–11 and 13 recite portions of the officers' affidavits and then point out inconsistencies in the statements. (Long Aff. ¶¶ 8–11, 13.) Paragraphs 14–16 consist predominantly of argument. (*Id.* ¶¶ 14–16.)

5

## III. UNDISPUTED FACTS[9]

### A. Long Reports to the Hospital and Speaks with Officer Alexander

After 11:30 p.m. on March 12, 2010, Officer William Alexander reported to Sentara Careplex Hospital ["Sentara"] in the City of Hampton to investigate an individual who walked into the emergency room for treatment of a gunshot wound. (Alexander Aff. ¶¶ 2–3.) Officer Alexander found Long in an examination room complaining of a gunshot wound. (Id. ¶ 4.) Long told Officer Alexander that he was walking on the sidewalk along Cunningham Drive, headed to Wendy's on Mercury Boulevard, from Liberty Estates Apartments, when he heard eight to ten shots coming from an unknown car. (Id. ¶ 5; Long Aff. ¶ 2.) Long stated he got on the ground and waited until the shooting stopped. (Alexander Aff. ¶ 5; Long Aff. ¶ 2.) An unknown black male in a Toyota Camry stopped to check on Long. (Alexander Aff. ¶ 5; Long Aff. ¶ 2.) Long explained to the driver that someone shot him and accepted a ride to Sentara. (Alexander Aff. ¶ 5; Long Aff. ¶ 2.) Officer Alexander remained with Long and his mother, Paulette D. Jones, for twenty to thirty minutes before Officer Steven Nemetz and Detective Joseph Beres arrived. (Alexander Aff. ¶ 5; Jones Aff. ¶ 1; Long Aff. ¶ 3.)

### B. Initial Report of Shooting to Sergeant Meadows

Shortly before midnight on March 12, 2010, First Sergeant James Meadows ("Sergeant Meadows") received a complaint on his radio regarding shots fired with injury involved at 74 Emeraude Plage, in the City of Hampton. (Meadows Aff. ¶ 2.) Based upon Sergeant Meadows's

---

[9] Long seeks to create a dispute as to one fact: a phone call between Detective Beres and Sergeant Meadows. As discussed below, Long fails to create a genuine dispute as to the officers' sworn testimony that Detective Beres made the phone call. *See infra* Part III.D. For this reason, the facts surrounding the phone call do not prevent the Court from awarding summary judgment to the defendants.

examination of the physical evidence at the scene of the shooting, he determined that the incident involved two shooters and believed it highly likely that the two shooters targeted one another.[10] (*Id.* ¶ 3.) Only one suspect/victim remained at the scene of the shooting, and he required immediate medical attention due to life-threatening injuries. (*Id.*)

Shortly after midnight, the police dispatcher notified Sergeant Meadows "that a complaint was received regarding a shooting victim who had been dropped off at [Sentara]." (*Id.* ¶ 4.)

> Based on [his] training and experience [Sergeant Meadows] believed that *the story that this victim provided was highly questionable since no other shooting complaints had recently been received by the Hampton Police Division.*[11] In addition, based on [his] training and experience [he] believed it was highly probable that the shooting victim who was dropped off at the hospital . . . was in fact involved in . . . the . . . shooting incident in the parking lot near 74 Emeraude Plage.

(*Id.* (emphasis added).) This shooting victim was none other than Long himself. Detective Beres, who was with the victim at the hospital, then informed Sergeant Meadows that Long described his injury occurring somewhere other than Emeraude Plage. Based upon his firsthand investigation and the information that Detective Beres conveyed to him, Sergeant Meadows

---

[10] Sergeant Meadows found numerous shell casings in two distinct areas of the parking lot. (Meadows Aff. ¶ 3.) One area contained only 9mm casings, while the second contained only 10mm casings and a 10mm handgun. (*Id.*)

[11] Officer Alexander and Detective Beres also remember no radio traffic about gunshots at this time except the shooting at Emeraude Plage. (Alexander Aff. ¶ 6; Beres Aff. ¶ 5.) Indeed, Computer Aided Dispatch ("CAD") records for the period of 11:00 p.m. on March 12, 2010, to 1:00 a.m. on March 13, 2010, show five reports beginning at approximately 11:33 p.m., reporting gunshots heard within two to three blocks of Emeraude Plage. (Gardner Aff. Ex. A 2–4.) The only other report regarding a gunshot occurred at 12:04 a.m., and the location is Sentara Careplex Hospital. (*Id.* ¶ 6–7, Ex. A 2–4.)

7

instructed Detective Beres to obtain a Gunshot Residue ("GSR") Test Kit and perform a GSR Test on the victim. (*Id.* ¶ 5; Beres Aff. ¶ 3.)

### C. The Phone Call and the GSR Test

At this point, the information in Long's affidavit and the officers' affidavits diverge. The defendants contend that after Long refused to submit to a GSR Test, Detective Beres left the room, phoned Sergeant Meadows, and then administered the GSR Test over Long's objection.

More specifically, Detective Beres states that upon his arrival, Officer Alexander summarized Long's statements about the shooting to Officer Nemetz and Detective Beres. (Nemetz Aff. ¶ 5; Alexander Aff. ¶ 8; Beres Aff. ¶ 4.) Defendant Beres then explained to Long that he needed to test Long's hands for gunpowder residue. (Beres Aff. ¶ 7.) Long refused the test. (*Id.*) Detective Beres left the room briefly to call Sergeant Meadows. (*Id.* ¶ 8; Meadows Aff. ¶ 6.) Detective Beres relayed Long's explanation of how Long was shot on Cunningham Drive and received a ride from an unknown motorist to Sentara. (Meadows Aff. ¶ 6.) Sergeant Meadows knew of no reported shooting incidents on Cunningham Drive. (*Id.* ¶ 11.) Sergeant Meadows explained to Detective Beres that Long lacked the option to refuse the GSR Test due to exigent circumstances, either because any evidence on Long's hands could dissipate naturally or from increased perspiration, or because Long could clean it off. (*Id.* ¶ 9–10; Beres Aff. ¶ 8.) Sergeant Meadows instructed Detective Beres to restrain Long's hands so the officers could complete the GSR Test if Long continued to refuse. (Meadows Aff. ¶ 9; Beres Aff. ¶ 8.)

In response, Long asserts:

> 3. At all times, there was a police officer guarding the door of the emergency room I was in. In the middle of my treatment Det. Beres and Nemetz entered my room and told everyone they needed to leave. The nurses finished cleaning the wound and left. My mother moved from beside my bed toward the doorway and stood there.

> 4. At that time Det. Beres approached me with the GSR testing device in his hand, at which time he asked for my consent to perform the test on my hands. At that time I stated "no I'm not taking any test, I'm a victim not a suspect." Det. Beres then stated "[I] had to take the test because the evidence could be destroyed." Again, I stated "no, I do not want to take any test." At that time, Det. Beres looked at the other two officers, which in return one had grabbed my right upper arm and the other grabbed my left upper arm and forcefully pulled them in an outward motion so that Det. Beres could swab my hands.
>
> 5. *To the best of my recollection, I do not remember Det. Beres or the other two officers leaving my room prior to forcefully swabbing my hands.*

(Long Aff. ¶¶ 3–5 (alteration in original; emphasis added).)

### D. Long Fails to Create a Genuine Dispute of Fact about the Phone Call

Long attempts to refute the officers' sworn testimony that Detective Beres left the room to phone Sergeant Meadows after Long refused to submit to the GSR Test. Thus, Long seeks to create a dispute of fact about whether Sergeant Meadows actually knew from Detective Beres some specific details regarding how Long received his gun shot injury.[12]

As previously noted, a nonmovant must establish a genuine factual dispute to stave off summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Long fails to create a genuine dispute. In his affidavit, Long states that *"[t]o the best of my recollection, I do not remember* Det. Beres or the other two officers leaving my room prior to forcefully swabbing my hands." (Long Aff. ¶ 5 (emphasis added).) Long's equivocal statement fails to create fair doubt sufficient to counter the officers' sworn testimony that Detective Beres left the room to phone Sergeant Meadows. *See, e.g., Carroll v. Lynch*, 698 F.3d 561, 565 (7th Cir. 2012) (citing cases for the proposition that "nothing requires the district court to disbelieve defendants' proffered evidence simply because [plaintiff]—without proof—asserts it is false"); *In re Adamian*, No. 98-55610, 1999 WL 1091952, at *3 (9th Cir. Dec. 2, 1999) (finding the statement

---

[12] These details include: (1) the exact location where Long claimed the shooting occurred, *i.e.*, Cunningham Drive; and (2) that a motorist unknown to Long dropped him off at Sentara.

9

"at no time did I see any foreclosure notices" insufficient to raise a genuine dispute that trustee posted no foreclosure notices). Long's ambiguous statement fails to generate a genuine dispute of fact precluding summary judgment. *See M & M Med. Supplies & Serv., Inc. v. Pleasant Valley Hosp., Inc.*, 981 F.2d 160, 163 (4th Cir. 1993) ("A motion for summary judgment may not be defeated by evidence that is 'merely colorable' or 'is not sufficiently probative.'" (quoting *Anderson*, 477 U.S. at 249–50)).

The equivocal nature of Long's testimony contrasts with the definitive character of his brief wherein he alleges that "not once did any of the defendants leave plaintiff's room to make a phone call prior to unlawfully swabbing Plaintiff's hands." (Brief in Opposition 2 (citing Long Aff. ¶ 5).) Long may not, however, rely on "mere allegations . . . to show there is a genuine issue for trial." *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 875 (4th Cir. 1992) (citing *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)).[13]

Furthermore, Long contends his mother, Paulette Jones, observed the entire interaction between Long and the officers. Critically, Jones's affidavit lacks any testimony about a phone call or whether Detective Beres left Long's hospital room to phone Sergeant Meadows. Thus, the Court can draw no inference favorable to Long about whether Detective Beres made a phone call or its timing based upon Jones's affidavit. Because Long establishes no more than "metaphysical doubt" about the occurrence or timing of the phone call, Long creates no genuine dispute of fact that precludes summary judgment. *Emmett v. Johnson*, 532 F.3d 291, 297 (4th

---

[13] Moreover, neither of Long's statements dispute that Detective Beres made a phone call to Sergeant Meadows. Long simply disputes the call's timing. Nor can Long dispute that Detective Beres may have made the phone call before entering Long's room after hearing Long's story from Officer Alexander.

Cir. 2008) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

## IV. ANALYSIS

The defendants ask this Court to dismiss Long's Fourth Amendment claim because they had probable cause to conduct the GSR Test and the exigent circumstances exception applies. (Br. Supp. Mot. Summ. J. 12–15.) The defendants also assert entitlement to qualified immunity.[14] (*Id.* at 15–17.)

"Warrantless searches 'are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *United States v. Simmons*, 380 F. App'x 323, 329 (4th Cir. 2010) (quoting *United States v. Bush*, 404 F.3d 263, 275 (4th Cir. 2005)). The exigent circumstances exception requires that "'police officers (1) have probable cause to believe that evidence of illegal activity is present and (2) reasonably believe that evidence may be destroyed or removed before they could obtain a warrant.'" *Id.* at 330 (quoting *United States v. Cephas*, 254 F.3d 488, 494–95 (4th Cir. 2001)); *see Cupp v. Murphy*, 412 U.S. 291, 295–96 (1973).

---

[14] "When qualified immunity is asserted, the reviewing court should usually first ask whether the right was violated on the facts [established at summary judgment], and then determine whether that right was 'clearly established.'" *LeSueur-Richmond Slate Corp. v Fehrer*, 666 F.3d 261, 264 (4th Cir. 2012) (citing *Smith v. Smith*, 589 F.3d 736, 739 (4th Cir. 2009)); *see Pearson v. Callahan*, 555 U.S. 223, 236 (2009) ("[W]e conclude that, while the sequence set forth [in *Saucier v. Katz*, 553 U.S. 194 (2001)] is often appropriate, it should no longer be regarded as mandatory.") For the reasons set forth below, Long fails to establish a violation of his rights under the Fourth Amendment. Thus, the Court need not address qualified immunity.

## A. Probable Cause

Probable cause for a search exists "where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Ornelas v. United States*, 517 U.S. 690, 696 (1996) (citing *Brinegar v. United States*, 338 U.S. 160, 175–76 (1949); *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). The Court examines the totality of the circumstances "from the standpoint of an objectively reasonable police officer." *Id.* Here, as explained below, the totality of the circumstances establishes probable cause for Sergeant Meadows to believe that Long's hands would contain evidence of the gun fight occurring at Emeraude Plage.

Fourth Amendment jurisprudence permits Sergeant Meadows to rely upon the information provided by the police dispatcher, based in turn upon a complaint from an identified individual.[15] *United States v. Quarles*, 330 F.3d 650, 655 (4th Cir. 2003) (allowing police to rely on tip conveyed by dispatch when caller provided sufficient information to identify himself, thus, lending to credibility and reliability). Moreover, the collective knowledge doctrine permits Detective Beres and Officers Alexander and Nemetz to rely on Sergeant Meadows's determination that probable cause existed to justify the GSR Test. *United States v. Joy*, 336 F. App'x 337, 341–42 (4th Cir. 2009) (approving the use of the "collective knowledge" of officers to establish probable cause (citing *United States v. Laughman*, 618 F.2d 1067, 1072–73 & n.3 (4th Cir 1980))); *see United States v. Massenburg*, 654 F.3d 480, 491–96 (4th Cir. 2011) ("[S]o long as the officer who orders an arrest or search has knowledge of facts establishing probable

---

[15] The dispatch log indicates that a Tim Pipkin from Sentara called in the complaint about the gunshot victim dropped off at the hospital. (Gardner Aff. Ex. A. 4.)

cause, it is not necessary for the officers actually making the arrest or conducting the search to be personally aware of those facts." (quoting *Laughman*, 618 F.2d at 1072)).

When Sergeant Meadows ordered Detective Beres to conduct a GSR Test on Long, Sergeant Meadows knew the following: (1) the shooting near 74 Emeraude Plage involved two individuals firing at one another; (2) only one injured victim remained at the scene; (3) police dispatch received a complaint that someone dropped off a gunshot victim at Sentara; (4) prior to receiving this dispatch, Hampton police received no complaints of gunshots in the vicinity around that time, other than the shooting incident at Emeraude Plage; (5) the story provided by the gunshot victim in Sentara conflicted with Sergeant Meadows's knowledge that no other complaints of gunfire had been registered with the police; and, (7) Officer Meadows recalled no occasion, in his thirty years as an officer, when someone transported a gunshot victim to the hospital for treatment and failed to remain to provide a statement to police.

In light of the foregoing circumstances, probable cause existed for the defendants to believe that Long was involved in the shooting at Emeraude Plage and that his hands contained evidence of that incident, namely, gunshot residue.

### B. Exigent Circumstances

In addition to probable cause, the defendants must demonstrate exigent circumstances by establishing that they reasonably believed that evidence of the crime would be destroyed or removed before they could obtain a warrant. *United States v. Watson*, No. 11-5126, 2012 WL 2047673, at *1 (4th Cir. June 7, 2012) (quoting *Cephas*, 254 F.3d at 494–95). Factors relevant in determining whether exigent circumstances exist include: (1) the degree of urgency and amount of time necessary to obtain a warrant; (2) the officers' reasonable belief of the evidence's imminent destructibility; (3) information indicating "the possessors of the contraband are aware

that police are on their trail"; and, (4) the ready destructibility of the evidence sought. *United States v. Turner*, 650 F.2d 526, 528 (4th Cir. 1981) (citing *United States v. Rubin*, 474 F.2d 262, 268–69 (3d Cir. 1973)). As explained below, these factors establish exigent circumstances existed at the time of the search.

Based on his extensive experience as an officer, Sergeant Meadows knew that the gunshot residue was likely to dissipate before he could obtain a search warrant, particularly given Long's own ability to destroy the evidence. *See United States v. Jones*, No. 10-336 JNE/AJB, 2011 WL 1837861, at *5 (D. Minn. Mar. 31, 2011) ("By its nature, gun shot [*sic*] residue evidence ... is subject to loss or destruction in the absence of immediate affirmative efforts to preserve the evidence.") Furthermore, the officers' inquiry gave Long notice of their suspicion that he had fired a gun. Thus, Long "was sufficiently apprised of his suspected role in the crime to motivate him to attempt to destroy what evidence he could without attracting further attention." *Cupp*, 412 U.S. at 296.[16] Because Sergeant Meadows reasonably believed that the evidence of the crime would be removed or destroyed before police could secure a warrant, exigent circumstances existed for the warrantless but minimally intrusive GSR Test. *See United States v. Pettiford*, 295 F. Supp. 2d 552, 560–61 (D. Md. 2003) (finding exigent circumstances existed in light of ready destructibility of gunshot residue).

---

[16] In *Cupp*, the husband of a strangulation victim voluntarily reported to the police station, and while not arrested, the police had probable cause to believe he committed the murder. 412 U.S. at 292. The husband refused to submit to a fingernail sample, placed his hands behind his back, and appeared to rub them together. *Id.* at 296. The Supreme Court upheld the warrantless search of his fingernails, holding that the circumstances "justified the police in subjecting him to the very limited search necessary to preserve the highly evanescent evidence they found under his fingernails." *Id.* (citing *Schmerber v. California*, 384 U.S. 757 (1966)).

## V. CONCLUSION

Because probable cause and exigent circumstances existed to justify the GSR Test of Long's hands, no Fourth Amendment violation occurred. The defendants' Motion for Summary Judgment will be GRANTED. The action will be DISMISSED.

An appropriate Final Order will accompany this Memorandum Opinion.

Date: 1/10/13
Richmond, Virginia

/s/
John A. Gibney, Jr.
United States District Judge